KAMLESH CHAUHAN
REGISTER NO.
L.S.C.I. ALLENWOOD
P.O. BOX 1000
WHITE DEER, PENNSYLVANIA 17887

NOVEMBER 25, 2019

THE HONORABLE PAUL W. GRIMM
UNITED STATES DISTRICT JUDGE
UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
GREENBELT DIVISION
6500 CHERRYWOOD LANE, SUITE 465A
GREENBELT, MARYLAND 20770

Re: United States v. Kamlesh Chauhan, Docket No. 8:18-CR-214 (PWG)

Dear Judge Grimm:

Defendant, appearing pro se, respectfully submits this letter-motion in lieu of a more formal motion for an order vacating his sentence, pursuant to 28 U.S.C. 2255, for appointment of counsel, pursuant to 18 U.S.C. 3006A(a)(2)(B), and for an order releasing him on bond pending the final disposition of this motion, pursuant to the Court's inherent authority. For the reasons that follow, the Court should grant this motion in its entirety.

I. BACKGROUND.

On April 17, 2018, a grand jury in the District of Maryland returned a three-count indictment charging Defendant with engaging in sexual contact with "Victim A" without the permission of "Victim A," in violation of 18 U.S.C. 2244(b). The alleged offenses occurred on October 6 & 12, 2016, and March 30, 2018 (Counts One, Two and Three, respectively). Pursuant to a written plea agreement, and on the advice/direction of counsel (Larry Allen Nathans, Esq.), this Defendant entered a plea of guilty to Count Three. On March 12, 2019, the Court sentenced Defendant to a prison term of 10 months in accordance with the binding plea agreement. No appeal was taken inasmuch as Defendant was advised by counsel that no appeal could be taken. Defendant is serving his sentence at the Low Security Correctional Institution in Allenwood, PA.

II. STATEMENT OF RELEVANT FACTS.

In the interest of brevity and judicial economy, only the facts relevant to this proceeding are set forth hereinafter. Defendant does hereby affirm, declare and state, under penalty of perjury, and pursuant to 28 U.S.C. 1746, that the facts set forth herein are true and correct to the best of his knowledge, belief and recollection.

Defendant and the alleged victim enjoyed a long term consensual/romantic relationship prior to the indictment in this case. That relationship included consensual sexual encounters (including intercourse), some of which occurred in the workplace. On several occasions Defendant and the alleged victim enjoyed leisure activities outside of the workplace, to include Defendant's residence. One of the encounters occurred in the spring of 2013 in Azalea Park, where the "victim" posed for photos taken by Defendant. On another occasion, during the summer of 2013, at the Patuxent Ridge Wildlife Center, the alleged victim posed for approximately 50 photos, taken by the Defendant. During that encounter, the "victim" disrobed inside of a car (at least four times) in the presence of Defendant, and for his pleasure and exclusive viewing, to change outfits in which to be photographed by Defendant. Each act of disrobing in the presence of Defendant was designed by the alleged victim to arouse this Defendant. This rendezvous was proposed and orchestrated by the alleged victim.

On other occasions, the alleged victim and the Defendant enjoyed outings that included the children of both the alleged victim and Defendant. As with many of their escapades, these were also photographed.

The romantic and completely consensual/mutual relationship was initiated by the alleged victim, and pursued by the alleged victim. At no time did Defendant seek out the alleged victim for their leisure or sexual encounters. Each instance was at the urging -- and often insistence of the alleged victim. More importantly, at no time, including on March 30, 2018, was Defendant of the belief or under the impression that his sexual contact with the alleged victim was without at least the implied permission of the alleged victim.

[Motion to Vacate Conviction, Page 2.]

Prior to entering a plea of guilty in this case, Defendant discussed his conduct as it related to the alleged "victim" with his attorney. After informing his attorney that he believed he had the permission of the alleged "victim" to engage in the sexual contact alleged since it was commonplace for the alleged "victim" to present to Defendant's office for the sole purpose of engaging in sexual acts (all at the alleged "victim's" urging), his attorney advised that Defendant's belief that he was acting with the alleged "victim's" permission, did not alter the fact that given Defendant's supervisory position over the alleged "victim," Defendant's conduct violated the statute.

Prior to accepting the plea offer, counsel advised Defendant that rejecting the plea and proceeding to trial would certainly result in a conviction on more serious charges, and a substantially longer prison term then the one offered under the terms of the plea agreement. Accepting counsel's advice that his conduct was criminal despite his long-term romantic relationship with the alleged "victim" and his belief that his conduct was not only permitted by the alleged "victim" but also desirable to the alleged "victim," given his "supervisory position," Defendant accepted the plea offer and entered a plea of guilty. Defendant was also unaware that, if this case had proceeded to trial, the Government would have to prove that he acted without the permission of the alleged "victim," and that he either knew or believed that he was acted without the alleged "victim's" permission.

Notably, Defendant executed a plea agreement which described the elements of the offense, in part, as follows:

First, that Defendant "engaged in sexual contact;"
Second, that Defendant "acted knowingly when he engaged in that sexual contact;"
Third, that Defendant engaged in sexual contact "with the intent to . . . arouse or gratify the sexual desire of any person;" and
Fourth, that Defendant's conduct occurred on "lands within the special maritime and territorial jurisdiction of the United States."

(Plea Agreement at 1 [September 11, 2018]) Annexed to the plea agreement was a written "Stipulation of Facts" which provided, as it relates to the conduct underlying the offense of conviction, that:

On March 30, V-1 was in CHAUHAN's office. CHAUHAN told V-1 to stand up for a hug and tried to kiss V-1. CHAUHAN touched V-1's breast and tried to remove V-1's shirt. V-1 pulled the shirt back down and left.

(Id. "Attachment A") Neither the plea agreement's description of the elements nor the Stipulation of Facts refers to the lack of permission essential element of the charged offense, and counsel advice conveyed to Defendant that the permission was irrelevant given Defendant's supervisory position.

Prior to sentencing, a "Victim Impact Statement" was submitted by the alleged victim contending that Defendant "sexually assaulted [her] over a decade," "[she] couldn't fight him off," "he achieved sexual pleasure and gratification at [her] expense and against [her] will," and "[t]he sexual assaults hurt [her] emotionally, physically, and psychologically." (See, Victim Impact Statement at 1-2) However, the "victim" has not recounted the many consensual sexual encounters, which include oral sex (performed by the alleged victim) and intercourse, with the Defendant, nor does she allude to the joint family outings she participated in with Defendant, or her many visits to Defendant's residence. Instead, provides false narratives of being victimized by this Defendant. However, the true victims are this Defendant and his family.

The Defendant has secured photographs (some of which counsel was advised of and privy to) which depict encounters with the alleged "victim" (outside the work environment) smiling and clearly enjoying herself, while posing for photos taken by Defendant. In addition, Defendant has secured writings from the alleged "victim" which paint a different picture than the one painted by the indictment, the Government's version of events, and the totally false allegations in the Victim Impact Statement.

Defendant now seeks an order staying the service of the sentence, releasing him on bail, and vacating the judgment of conviction and sentence. This motion should be, and is hereby due to be granted.



[Motion to Vacate Conviction, Page 3.]

### III. ARGUMENTS.

#### A. BY VIRTUE OF INEFFECTIVE ASSISTANCE OF COUNSEL, AND DESPITE BEING ACTUALLY INNOCENT, DEFENDANT ENTERED A PLEA OF GUILTY THAT WAS NEITHER KNOWING, VOLUNTARY, NOR INTELLIGENT, AND THE JUDGMENT SHOULD BE VACATED TO CORRECT A COMPLETE MISCARRIAGE OF JUSTICE

(i) The Legal Standard.

To establish entitlement to relief under 28 U.S.C. 2255, Defendant must show, by a preponderance of the evidence, that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." 28 U.S.C. 2255(a). Moreover, a pro se movant, such as this Defendant, is entitled to have his arguments reviewed with appropriate consideration. See, Gordon v. Leeke, 574 F.2d 1147, 1151-53 (4th Cir. 1978).

To sustain a claim of ineffective assistance of counsel, a defendant must demonstrate show that "counsel's efforts were objectively unreasonable when measured against prevailing professional norms." Frazer v. South Carolina, 430 F.3d 696, 703 (4th Cir. 2005). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985)(quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).

In evaluating objective unreasonableness, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Strickland v. Washington, 466 U.S. 668, 689 (1984). The court must assess the reasonableness of attorney conduct "as of the time their actions occurred, not the conduct's consequences after the fact." Frye v. Lee, 235 F.3d 897, 906 (4th Cir. 2000). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

In addition, a defendant must show prejudice -- i.e., that "there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S. at 694. For a guilty plea, this requires a showing that with proper legal counsel, a defendant "would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

Additionally, a guilty plea must be the informed and intelligent decision of the defendant. Boykin v. Alabama, 395 U.S. 238, 242 (1969); North Carolina v. Alford, 400 U.S. 25, 31 (1970). The Constitution imposes the "minimum requirement that the plea be the voluntary expression of the defendant's own choice." United States v. Moussaoui, 591 F.3d 263, 278 (4th Cir. 2010). Since "[a] guilty plea operates as a waiver of important rights and is valid only if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005).

This Court has stated "[a] plea is invalid if a defendant pleads guilty without being informed of the elements of the crime at some point." Enow v. Wolfe, Civil No.: PWG-17-1912, 2018 U.S. Dist. LEXIS 123070, at *10 (D. Md., July 23, 2018); Withanachchi v. United States, 803 F. Supp.2d 360, 365 (D. Md. 2011)("A guilty plea is invalid if the defendant enters the plea without knowledge of the crime's elements"); see also United States v. Broce, 488 U.S. 563, 569 (1989); Fields v. Attorney General of the State of Md., 956 F.2d 1290 (4th Cir. 1992)

[Motion to Vacate Conviction, Page 4.]

    (ii)    Counsel's Deficient Performance In Misinforming Defendant Of The Essential Elements of The Offense Of Conviction Renders The Plea Involuntary, Unknowing And Unintelligent.

The statute under which Defendant was convicted, 18 U.S.C. 2244(b), requires proof that, inter alia, "the sexual contact was without the victim's permission." United States v. Price, 2019 U.S. App. LEXIS 10814, at *15 (9th Cir., Apr. 12, 2019). Although "permission" "is an objective concept, it includes both explicit and implicit permission." Id. In enacting the Sexual Abuse Act of 1986, of which Section 2244(b) is a part, Congress sought to expand criminal culpability for sexual acts and contacts and facilitate prosecution of those crimes. Thus it placed the burden on the actor who knowingly engages in sexual contact with another person to first obtain the person's consent, objectively given. The Government need not prove that the defendant subjectively knew he lacked consent. Instead, "it need only prove that the victim did not consent as an objective matter." Id. at *34. In this respect, the circumstances surrounding the parties relationship are probative of a defendant's knowledge that he is acting with or without consent. See, e.g., United States v. Cohen, 2008 WL 5120669, at *2 (2d Cir. Dec. 8, 2008); United States v. Hawkins, 603 F. App'x 239, 241 (5th Cir. 2015)

In explaining the elements of the offense to Petitioner, counsel advised Defendant (in a manner consistent with the plea agreement) that his position as the alleged victim's supervisor rendered his conduct unlawful and implied consent was irrelevant. The plea agreement provided:

Elements of the Offense

2.    The elements of the offense to which Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Indictment, in the District of Maryland, the defendant (1) engaged in sexual contact; (2) acted knowingly when he engaged in that sexual contact; (3) did so with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; and (4) did so on lands within the special maritime and territorial jurisdiction of the United States.

(Plea Agreement at 1). Even the Stipulation of Facts annexed to the Plea Agreement did not describe the conduct occurring on the date of the offense as lacking the "permission" of the alleged victim. Thus, Counsel's advice, coupled with the plea agreement and stipulation of facts, served to misinform Defendant of the true elements of the offense, undermining the voluntariness and validity of the guilty plea. But for counsel's misrepresentations of the essential "permission" element, the Defendant would never have entered a plea of guilty. Instead, he would have insisted on proceeding to trial given evidence of the long-standing mutually romantic, sexual, and consensual relationship with the alleged victim.

Notably, counsel's performance (in misrepresenting to Defendant an essential element of the charged offense) fell far below an objective standard of reasonableness under prevailing professional norms. Suffice it to say that an attorney who has misled a client, for the purpose of inducing a guilty plea to an offense that the client is actually innocent of committing, does not act as the attorney contemplated by the Sixth Amendment and acts far outside standards of prevailing professional norms.

Defendant had a long-standing romantic relationship with the alleged victim, that he apprised counsel of. That relationship included, but was not limited to, family outings Defendant, the alleged victim, and their children. Defendant provided counsel scores of photographs (i.e., evidence of the alleged victim's "permission"), which undeniably established the existence of a consensual/mutual romantic relationship which began in the workplace and continued outside thereof.

[Motion to Vacate Conviction, Page 5.]

Despite this overwhelming and compelling evidence of Defendant's actual innocence, counsel misrepresented to Defendant the import of the consensual nature of the relationship, advising Defendant that the fact that Defendant was the alleged victim's supervisor rendered his conduct unlawful under the statute -- 18 U.S.C. 2244(b). Nothing could have been further from the truth, and the conviction must be promptly vacated.

    (iii)    Counsel's Deficient Performance In Misrepresenting To The Defendant That A Two Level Enhancement Applied On The Basis That The "Victim" Was Under Defendant's Supervisory Control.

Defendant entered into a plea agreement with a stipulated 10 month sentence that was based, in part, on a two level enhancement under U.S. Sentencing Guidelines Section 2A3.4(b)(3), which was premised upon the notion that the alleged victim was in Defendant's "custody, care, or supervisory control." Relying on counsel's advice, Defendant believed that the enhancement applied in this case. However, in preparing the Presentence Report, the U.S. Probation Office made clear that the enhancement had no application in this case. The Government opposed, and counsel stood silent.

The enhancement had no application to even the alleged facts in this case, and but for counsel's incorrect advice that the enhancement applied, Defendant would have rejected the proposed plea offer, and not entered a plea of guilty. Instead, Defendant would have insisted on proceeding to trial. Notably, but for the misapplication of the Guideline to this Defendant, there is a substantial likelihood that no prison term would have been imposed at all.

In United States v. Crane, 965 F.2d 586 (8th Cir. 1992), the Eighth Circuit approved a two-level enhancement where the evidence showed that the defendant has at least temporary custody or care of the victim. See also, United States v. Voice, 200 F.3d 584, 585 (8th Cir. 2000); United States v. Chasenah, 23 F.3d 337, 338-39 (10th Cir. 1994). The applicable cases appear to establish, overwhelmingly, that there must be some sort of custodial component between the Defendant and the victim. Here, no such relationship exist. At no time was the alleged victim not free to move about as she wished, and in fact did just that.

In United States v. Blue, 255 F.3d 609, 614 (8th Cir. 2001), the Eighth Circuit reversed a two-level enhancement where the "district court's reasoning does not establish custody but only demonstrates proximity." That is the case here. While the Defendant exercised supervisory authority over the alleged victim, he enjoyed no "supervisory control," which could only exist in instances where an individual is responsible for another individuals well-being. See, United States v. Afolabi, 455 F. App'x 184, 186 (3d Cir. 2011)("2-level increase, applicable where a sexual abuse victim was in the 'custody, care, or supervisory control of the defendant,' . . . should not apply unless the victim were a minor")

Counsel's misrepresentations and inaction deprived Defendant of the counsel's guaranteed by the Sixth Amendment. But for counsel's unprofessional conduct, Defendant would never have entered a plea of guilty and would not currently be imprisoned. Accordingly, the judgment of conviction and sentence must be promptly vacated.

    B.    AN EVIDENTIARY HEARING IS WARRANTED.

The question of whether an evidentiary hearing is necessary is "left to the common sense and sound discretion of the district judge[]." Raines v. United States, 423 F.2d 526, 531 (4th Cir. 1970). In the ordinary case, an evidentiary hearing is appropriate only where "defendant has pled facts that, if established, entitle him to relief, and there is a material dispute regarding those facts." Higgs v. United States, 711 F.Supp.2d 479 (D.Md. 2010); accord United States v. Yearwood, 863 F.2d 6, 7 (4th Cir. 1988), abrogated on other grounds by Padilla v. Kentucky, 599 U.S. 359 (2010).

Here, Defendant has raised a number of substantial factual and legal questions that call into question for counsel's professional conduct, the conduct of the Government, and the conduct of alleged victim. The record is devoid of essential documentary evidence which establishes Defendant's claims of ineffective assistance of counsel, and the record must be expanded to afford Defendant a full and fair opportunity to sustain his burden of proof.

Accordingly, the Court should promptly schedule this matter for an evidentiary hearing.

[Motion to Vacate Conviction, Page 6.]

C.  DEFENDANT SHOULD BE RELEASED ON BAIL.

Defendant began serving his 10 month term of imprisonment in May of 2019. That sentence will expire in March of 2020. As noted, despite being actually innocent of the offense of conviction, a two-level enhancement was applied as the result of a gross and clear misapplication of the Sentencing Guidelines. There is substantial evidence which establishes that Defendant acted, at very least, with the implicit permission of the alleged victim, and a complete miscarriage of justice has occurred here. Immediate action is warranted to lessen the unconstitutional blow to both Defendant and his family. The Court has the inherent authority to admit Defendant to bail, and it should exercise that authority here.

It is well settled that "[b]efore a prisoner may be released on bail pending collateral attack on his conviction, he must show substantial constitutional claims on which he has a high probability of success, and exceptional circumstances making a grant of bail necessary for habeas remedy to be effective." United States v. Eliely, 276 F. App'x 270, 270 (4th Cir. 2008); United States v. Perkins, 53 F. App'x 667, 669 (4th Cir. 2002)(citing Aronson v. May, 85 S.Ct. 3 (1964)); see also Dotson v. Clark, 900 F.2d 77, 78 (6th Cir. 1990); United States v. Smith, 835 F.2d 1048, 1049 (3d Cir. 1987); Martin v. Solem, 801 F.2d 324, 328 (8th Cir. 1986); Cherek v. United States, 767 F.2d 335, 337 (7th Cir. 1985); Iuteri v. Nardoza, 662 F.2d 159, 161 (2d Cir. 1981); West v. United States, No. DKC-15-1236, 2018 U.S. Dist. LEXIS 11207, at *10-*11 (D.Md. Jan. 24, 2018).

Here, Defendant has demonstrated both substantial constitutional claims upon which he has a substantial likelihood of success, and exceptional circumstances in the form of irreparable harm. More specifically, if defendant is not released on bond, he will serve out his complete sentence, and will have suffered irreparable harm which the writ of habeas corpus is designed to thwart.

Accordingly, for the reasons stated, an order admitting Defendant to bail should issue forthwith in the interest of justice.

D.  THE COURT SHOULD APPOINT COUNSEL, PURSUANT TO 18 U.S.C. 3006A(a)(2)(B).

18 U.S.C. 3006A(a)(2)(B), provides that counsel may be appointed to a Defendant seeking habeas relief when he is unable to retain counsel, and when justice so requires. Defendant is without the means to retain private counsel and is also without the ability to press the claims advanced herein on his own. he has relied on the assistance of a fellow prisoner to prepare and submit this motion, and without counsel he will be unable to pursue this matter.

Accordingly, justice requires that counsel be appointed to assist Defendant with all future proceedings to be had in this matter, and the Court should promptly appoint counsel.

IV.  CONCLUSION.

For the many reasons stated, Defendant prays that this Court will issue an order vacating his conviction, appointing counsel, releasing him on bail, and scheduling an evidentiary hearing, in the interest of justice.

WHEREFORE, this motion should be granted.

Respectfully submitted,

/s/ Kamlesh Chauhan

Kamlesh Chauhan