```
                    UNITED STATES DISTRICT COURT

                    SOUTHERN DISTRICT OF MARYLAND


UNITED STATES OF AMERICA  )
                          )
      vs.                 )
                          )         Case Number 8:18-cr-00214-PWG
KAMLESH CHAUHAN,          )
                          )
          Defendant.      )
_____)


        TRANSCRIPT OF PROCEEDINGS - SENTENCING HEARING
             BEFORE THE HONORABLE PAUL W. GRIMM
             TUESDAY, MARCH 12, 2019; 1:00 P.M.
                     GREENBELT, MARYLAND


FOR THE GOVERNMENT:

    Hollis Raphael Weisman, Assistant United States Attorney
    UNITED STATES ATTORNEY'S OFFICE
    6500 Cherrywood Lane, Suite 200
    Greenbelt, MD  20770

FOR THE DEFENDANT:

    Larry Allen Nathans, Esquire
    NATHANS AND BIDDLE LLP
    120 E. Baltimore Street, Suite 1800
    Baltimore, MD  21202



   Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.
_____

                      CINDY S. DAVIS, RPR
                  FEDERAL OFFICIAL COURT REPORTER
                 6500 CHERRYWOOD LANE, SUITE 200
                      GREENBELT, MD  20770
```

1                            I N D E X

2                                                              P A G E

3  Determination of Sentencing Guidelines                          4

4  Allocution by Ms. Weisman for the Government                    8

5  Allocution by Mr. Nathans for the Defendant                     8

6  Sentence                                                       11

```
 1                    P R O C E E D I N G S
 2         (Call to order of the Court.)
 3         MS. WEISMAN:  Your Honor, this is the case of United
 4  States versus Kamlesh Chauhan, case number PWG-18-214.  Hollis
 5  Weisman representing the government, Your Honor, and with me at
 6  counsel table is Special Agent Endia Norman of the Agriculture
 7  OIG.
 8         THE COURT:  Thank you very much.  Mr. Nathans, you're
 9  here on behalf of the defendant Mr. Chauhan?
10         MR. NATHANS:  That's correct, Your Honor.  Thank you.
11         THE COURT:  Thank you.  We were last in court on
12  November 6th of 2018.  At that time the defendant entered a
13  plea of guilty to Count Three of the charges then pending
14  against him.  It charged him with abusive sexual contact, under
15  18 United States Code Section 2244(b), for which the maximum
16  punishment by statute would be two years imprisonment and a
17  $250,000 fine.  I set a sentencing date.  A presentence report
18  was prepared on December 26th and revised on February 4th.
19       Mr. Nathans, can you confirm for me that you have
20  reviewed the presentence report with your client?
21         MR. NATHANS:  We have, Your Honor.
22         THE COURT:  All right.  And, Dr. Chauhan, can you
23  confirm that you have reviewed the presentence investigation
24  report with Mr. Nathans?
25         THE DEFENDANT:  Yes, Your Honor.
```

**DETERMINATION OF SENTENCING GUIDELINES**

THE COURT: You can sit. You don't have to stand, sir.

I want to address the -- first start off with the proposed C-plea. At the time of the rearraignment, I conditionally agreed to be bound by the joint recommendation in the plea agreement for a sentence of 10 months, and that was conditional upon my reviewing the presentence report and determining whether or not there was anything in that that would cause me to disagree, and if I did, I would allow both the defendant and the government to withdraw from the plea.

I have reviewed the presentence report. There's nothing in it that causes me to be concerned about the range that was recommended, and I will be bound by that range because it is within the range of a guideline sentence, and that is whether or not the offense is at the level that was calculated by the presentence report, which was a 10 offense level and a criminal history category one, which would produce a six- to 12-month sentence. The plea agreement calculated the offense level at a 12, which would produce a 10- to 16-month sentence. So either way, the C-plea is within the range of a guideline sentence regardless of whether it's a 10-1 or a 12-1.

I want to address the issue that the parties raised and that was raised by the presentence investigation. In the plea agreement, the parties, when they calculated what the offense

1  level would be, they added points in accordance with guideline
2  section 2A3.4(b)(3), and that provision of the guideline has
3  the following language.  It says that for an abusive sexual
4  contact or attempt to commit abusive sexual contact, that if
5  the victim was in the custody, care, or supervisory control of
6  the defendant, increase by two levels.  And that was what was
7  done in the plea agreement.
8       The presentence report takes the position that that
9  should not be added, those two points, and the rationale comes
10 from the examples listed in application note 4, subparagraph A,
11 which gives examples as teachers, daycare providers,
12 babysitters, or other temporary caretakers are among those who
13 would be subject to this enhancement, and the probation officer
14 believed that for that reason the enhancement would not apply.
15      I have looked at the application note in the guidelines
16 section and the materials provided by counsel, and I've
17 considered the reasoning of the presentence report, and I --
18 the way I come down with that -- and I will tell you I tried to
19 do some research.  I couldn't find a lot that went through the
20 underlying cases that deal with this.  Most of the cases that
21 are charged under this statutory violation, the overwhelming
22 majority are for minors or for children, and under those
23 circumstances, of course, the examples listed in application
24 note 4 make sense.  But the beginning phrase in application
25 note (4)(A) is that subsection (B)(3) is intended to have broad

1  application and is to be applied whenever the victim is
2  entrusted to the defendant, whether temporarily or permanently.
3        Now, you can quibble about the language "entrusted to,"
4  because the victim in this case was not entrusted to the
5  defendant, but he certainly exercised supervisory control over
6  her.  And the rationale, when you look at the guideline, is
7  that whenever someone has a position of trust or authority that
8  they exercise over someone, and that person becomes a victim of
9  abusive sexual contact, then the very fact that one of them has
10 control and supervisory power that they can exercise over the
11 other is an example of an enhancing or aggravating set of
12 circumstances.  And the reason is very simple.  A subordinate
13 has less range or latitude or ability to push back and resist
14 and deter unwanted, improper abusive sexual contact.  If it's
15 in a situation of a parent or a guardian, then, of course, the
16 parental relationship gives that power dynamic or operates
17 against the victim.  If it's in school, it's a teacher or a
18 coach or a teaching assistant that gives that imbalance and
19 power that makes it -- facilitates the abuse and prevents and
20 causes concern to the victim.
21       And the same dynamic operates in an employment situation,
22 and the fact that one person is subordinate to another allows
23 there to be a power imbalance such that the dynamic is that the
24 more powerful person, if they are in that position when they
25 initiate unwanted abusive sexual contact, then it is an

1  aggravating factor, in my mind.
2       So I agree with counsel for the United States and counsel
3  for the defendant.
4       Ms. D'Amato, I respect your analysis.  I think that the
5  examples certainly show that it was a reasoned analysis.  The
6  case law doesn't give a whole lot of guidance on that, but I'm
7  going to respectfully request that the PSR be amended in
8  accordance with my findings here because I do find that the
9  plea agreement was the correct way to approach this.
10      I, therefore, conclude that the offense level is a 12;
11 the criminal history category was a one.  It produces a 10- to
12 12-month recommended range of incarceration, followed by one
13 year of supervised release; a fine of between $4 and $40,000;
14 and a $100, plus $5,000, special assessment, for the total of
15 $5,100.  And that would be my guidelines calculation.
16      Does either counsel for the United States or for
17 Dr. Chauhan wish to be heard on the calculation?
18           MS. WEISMAN:  No, Your Honor.
19           MR. NATHANS:  No, Your Honor.
20           THE COURT:  Okay.  As I said, I am binding myself to
21 the actual sentence, but I just have to make sure that that's
22 done.
23      Now, I want to take a moment, Ms. Weisman, before I ask
24 you for your sentencing presentation.  I have read the victim's
25 statement which you provided, and I have read it twice, and I

1  understand that the victim is not here today and that the
2  government's victim information is that which was provided to
3  me by you in writing; is that correct?
4        MS. WEISMAN:  That's correct, Your Honor.
5        THE COURT:  Then I am happy to hear your sentencing
6  presentation, Ms. Weisman.
7                **ALLOCUTION BY THE GOVERNMENT**
8        MS. WEISMAN:  Your Honor, the parties came to the
9  agreement that a 10-month sentence was appropriate, and we
10 maintain that.  We think that that is sufficient, but not
11 greater than necessary, to send the message to the defendant
12 and punish him for his behavior.  I do think that the victim's
13 statement is far more eloquent than I could be in this
14 courtroom, and we'd ask the Court to adopt that.
15       THE COURT:  Thank you.  Mr. Nathans.
16                **ALLOCUTION BY THE DEFENSE**
17       MR. NATHANS:  Thank you, Your Honor.  Your Honor, I
18 heard what you said, and I understand what the Court's ruling
19 is going to be, so I'm going to be particularly brief, Your
20 Honor.
21       THE COURT:  Whatever you think you need to do, sir.
22       MR. NATHANS:  No, no, I understand you're not cutting
23 me off, but sometimes less is more.
24     Judge, I did want to say some things about my client that
25 I think should be in the record and are very positive about

1  him.  He's 59, Your Honor.  As the Court knows, he has no
2  criminal record and I think, prior to this case, has had sort
3  of a true remarkable story.
4      He immigrated from a small town in India.  He furthered
5  his education in the United States by receiving his doctorate.
6  He's been married to the same person for over 30 years.  She's
7  in court today.  She's been at every proceeding.  The record is
8  pretty clear he's an excellent father.  He's raised two very
9  successful young men.  One of them is going to college next
10 year; one of them recently graduated.  The older son is doing
11 extremely well.
12      THE COURT:  Yes, he is.
13      MR. NATHANS:  He's been a good community member, Your
14 Honor.  He's always worked hard professionally and otherwise.
15 He's been a very successful scientist.  He's had an important
16 career as a research chemist at the USDA.
17      Your Honor, we attached to the sentencing letters exhibit
18 9, and I won't go over that, but it shows just how important
19 and successful he was in his career and how hard he tried in
20 the things that he did for all of us.
21      Judge, he has pled guilty.  He's accepted responsibility.
22 I think he's been privately and publicly humiliated and,
23 personally, just extremely upset about the whole process.  He
24 had to resign from his employment that he worked so hard at for
25 years.  He's been without employment.  He's suffered

1  significant financial and future economic loss.  He underwent
2  voluntary psychiatric counseling, which we've attached a
3  letter.  And, Your Honor, he's going to be incarcerated,
4  assuming the Court gives the sentence, at a non-minimum
5  security institution for multiple months.  Judge, we ask that
6  you give the fine of the $5,100.
7       I think Mr. Chauhan at this point, Your Honor, having
8  thought about the matter at great length and knowing what I
9  would say here today, is going to decline to allocute any
10 further at this point.
11          THE COURT:  Okay.  Thank you.
12      So, Doctor, you know that you have the right to speak
13 through your lawyer and not make any additional statement
14 yourself.  You also have the right, if you choose to do so, to
15 make a statement.  Whatever decision you make, I respect, and
16 if you choose to remain silent, as your lawyer has told me that
17 you plan to do, I will not draw any adverse inference against
18 you or in any way hold that against you.  Do you understand
19 that, sir?
20          THE DEFENDANT:  Yes, sir.
21             (Conference at the bench.)
22     (It is the policy of this court that every guilty plea
23 and sentencing proceeding include a bench conference concerning
24 whether the defendant is or is not cooperating.)
25

**SENTENCE**

THE COURT: Then I'm assuming, Mr. Nathans, there's nothing further, and I will now have you all take a seat, and I will proceed with my sentence.

I have carefully considered from the very beginning the plea agreement that counsel have entered into, and I think it was a proper and wise way in which to approach.

I want to note that, of course, I not only have reviewed the materials that counsel have filed, but I've also looked at the victim's statement, and it does speak in terms of how she felt in the course of these events that underlie the statement of facts that supported the plea agreement. It speaks of her feelings of anger, anxiety, fear, guilt, difficulty concentrating, depression, and loss of appetite, and actually saying that, although she has thought about getting counseling, it's too painful to talk about.

And I suspect, Ms. Weisman, that undergirds why the fact we're not here with a restitution request is because the victim has chosen, for private reasons, which are within her right, not to try to avail herself of the opportunity to have that as part of the sentence. And while it may well be that we think that some sort of counseling, which Dr. Chauhan has himself found to be helpful in getting insight into his situation, would be helpful to her, but it is her choice not to seek that, and I gather that that underscores the reason why there's not a

```
 1  restitution request here.  Is that accurate, ma'am?
 2          MS. WEISMAN:  That is.  Both the agent and our
 3  victim-witness coordinator have been in touch with her, and
 4  that's her choice.
 5          THE COURT:  I had no doubt about that.  I just wanted
 6  to make sure that it was clear or the record.
 7       So, Doctor, I have to consider the nature of the offense
 8  in deciding the sentence.  I think you have more insight into
 9  that now than perhaps you may have before.  And I think it's
10  safe to say that anytime an individual is in a position where
11  they feel as though they have been subjected to unwanted and
12  abusive sexual contact, that it is a serious offense that
13  leaves quite an impact on that person that may last for a great
14  deal of time, if not years and a lifetime.  So it is, of
15  course, a serious offense, and that's one of the factors I have
16  to take into consideration.
17       But I also need to take into consideration your history
18  and characteristics.  Until this event took place, as
19  Mr. Nathans said, you were a star student in India, a wonderful
20  country that has sent here to our country many scientists and
21  lawyers and medical professionals.
22       It was my privilege, in 1972, to spend a month
23  representing the United States at Republic Day ceremonies in
24  India and touring the country and getting a sense of just what
25  a remarkable place it was, and many individuals who were raised
```

in India have come to this country to try to bring their education, their talents to bear here.

You were one of those people. You were a scientist, you had great success as you were working for the United States government. You have published papers, and you had some degree of renown. You have a long-standing marriage. Your wife is here standing beside you here in this, although for her this must be as painful, if not more painful, than it is for you, for the simple reason that she, of course, is not at fault for the events that brought you here, but I think she probably feels as though she is suffering the punishment and maybe other members of your family.

Your son, your oldest son writes about what a great dad you are. He is a young man whose achievements should make you proud, of course, and they do. He has not only studied hard and applied himself but done so at exceptionally challenging schools and done so with great success, and he is a young man in whom you can be proud.

My hope is that with the greater insight that you have achieved by reaching out for counseling, understanding the events that led to why you are here today, your doctor has expressed the view that he does not believe that there will be any further repetition of this and does not believe that you are a danger for re-offending, which is good, and it is my hope that the insight that you gain from this will allow you to move

1  forward and find that you still have the ability to bring your
2  education and your skill to good use for the benefit of
3  yourself, your family, and the community, and an opportunity to
4  work with your family and your wife to repair the damage to the
5  relationship, where there must necessarily be a concern that
6  she has, legitimately, about a lack of trust, that I hope, sir,
7  that you work hard to try to recognize what is her pain in this
8  and to work with her to help repair that for your sake, for her
9  sake, and for the benefit of your children, who stand behind
10 you.  No father wants to be in a courtroom, feeling as though
11 he has let down his family.
12         So I do understand that that awareness, that public
13 awareness, I hope will be an extra incentive for you to move
14 forward and to prove that you can move forward from this, that
15 no other person ever need fear this kind of conduct by you, and
16 that you can reestablish yourself as a better person who can
17 once again hold his head up before his family, his community,
18 and his coworkers.
19         I take into consideration the fact that you have never
20 had any criminal charges against you, of course, so that is
21 appropriate for the sentence that has been recommended.
22         I also consider the fact that, therefore, the sentence
23 has to be no more than necessary to achieve the goals of
24 deterrence for you and others and to take into consideration
25 what the guidelines are.

1        So I do sentence you to the 10 months of imprisonment
2   that was the C-plea.  I will place you on supervised release
3   for one year under the following conditions:
4        Number one, I think that your psychiatrist's letter
5   suggests that you are a low risk for a repeat charge, but I do
6   agree with the Probation Department that you should at least be
7   evaluated as to determine whether you need any treatment.  If
8   they do not believe you will need treatment, then they're not
9   going to recommend it, and they may very much reach out to your
10  doctor and get the views of that.
11       If the Probation Department determines that the
12  assessment suggests that there's some treatment that you could
13  benefit from, I will order that.  But I'm not going to order
14  any specific type of treatment, only that if there is a
15  recommendation, based upon the sex-offense assessment, that you
16  need treatment, that you comply with that treatment.
17       I am going to order that there not be any contact with
18  the victim in this case.  She chose not to be here and to speak
19  in writing, and I want you to understand that that means that
20  you may not initiate or, if you do not initiate, if you receive
21  contact from the victim, that you just respond to that by
22  saying that you've been ordered by me not to have any contact.
23  And then, that way, you do not have to be the one to make that
24  decision.  I'm making that decision for you.
25       And there's a special assessment under these type of

1  cases of $5,100, as provided in the presentence report.
2         That is my sentence.  Mr. Nathans, have you had a
3  conversation about a surrender date, sir?
4              MR. NATHANS:  I have, Your Honor, and, Your Honor,
5  we'd also ask the Court to make a specific recommendation on
6  placement.
7              THE COURT:  Yes, do you have one in mind?
8              MR. NATHANS:  We do, Your Honor.  That would be FCI
9  Allenwood, Pennsylvania.
10             THE COURT:  Allenwood?  Sure.
11             MR. NATHANS:  And, Your Honor, we would ask for at
12 least 45 days or greater for him to surrender.
13             THE COURTROOM DEPUTY:  Forty-five days is April 29th,
14 and 60 days is May 13th.
15             THE COURT:  Would May 13th be acceptable?  Any
16 problem with May 13th?  That's 60 days.
17             MS. WEISMAN:  No problem.
18             MR. NATHANS:  May 13th would be fine, Your Honor.
19 Thank you.
20             THE COURT:  And that's at 9 a.m., Shante; is that
21 what it is?
22             THE COURTROOM DEPUTY:  Correct.
23             THE COURT:  All right.  So the surrender date will be
24 May 13th at 9 a.m., and I will recommend FCI Allenwood.
25        Doctor, if you believe, after consulting with your

```
 1  attorney, that there's any basis for an appeal -- the plea
 2  agreement waived any right to appeal, but if you believe that
 3  there's a basis for appeal, then you must note your appeal
 4  within 14 days of the entry of a judgment of conviction or
 5  within 14 days of any appeal that might be sought by the United
 6  States.
 7       Ms. Weisman, are there any other charges at this point
 8  that need to be dismissed?
 9            MS. WEISMAN:  Yes, Your Honor.  We would move to
10  dismiss the remaining charges.
11            THE COURT:  All remaining charges for offenses other
12  than what I have just sentenced Dr. Chauhan to are now
13  dismissed.
14       Anything further from the government?
15            MS. WEISMAN:  No, Your Honor.
16            THE COURT:  Anything further from you, Mr. Nathans?
17            MR. NATHANS:  Your Honor, I just have one question.
18  In terms of the evaluation that you've ordered, I would request
19  that if Mr. Chauhan would want to pay for it, that he could go
20  back to Dr. Epstein and get a more formal evaluation that he
21  can present to the Probation Department.
22            THE COURT:  If that's acceptable to the Probation
23  Department, I don't have a problem with that.  I think it's
24  best for me to rely upon their expertise in that regard, but I
25  will -- certainly, if they view the doctor as an acceptable
```

1  person to do it, and if he is willing to pay for it, then --
2  I'm not going to order them to do that, but I have no doubt
3  that they would consider it in good faith and make a
4  determination as to whether that was an appropriate way to
5  evaluate it.
6              MR. NATHANS:  Judge, I didn't attach his CV, which
7  probably was a little bit of a mistake, but the reason we chose
8  Dr. Epstein is it's someone that we've worked with in the past,
9  who has a lot of experience in cases involving -- sexual cases.
10 Actually, I think the first case I ever worked with him was a
11 case in Greenbelt where Rod Rosenstein was on the other side.
12 And he does a lot of that.  Although we didn't ask him to
13 specifically --
14             THE COURT:  Perhaps you could make that available to
15 the Probation Department to take a look at his CV.
16             MR. NATHANS:  Sure.
17             THE COURT:  Is that something that if you have
18 something like that, that that is something that the Probation
19 Department would consider?  I'm not ordering you to do it, but
20 if you had a qualified therapist who could do the assessment,
21 that the defendant was willing to pay for, would that be
22 something that could be considered?
23             PROBATION OFFICER D'AMATO:  I'm sure, Your Honor.
24 Usually, typically, cases like this will go to a specialist.
25 So they are a little bit more savvy in terms of what other

1  providers are out there.  But I know it's the case we do it for
2  substance abuse treatment, so I'm sure that they will consider
3  it.
4          THE COURT:  Particularly if this doctor is a
5  specialist in this area, and I know --
6          MR. NATHANS:  Your Honor, I have his CV if you'd like
7  me to put it in the record.
8          THE COURT:  I actually would rather you give it to
9  Ms. D'Amato so that the Probation Department has it.  It's in
10 their hands now, so that would be great if they have that.
11         MR. NATHANS:  Thank you.
12         THE COURT:  I thank our courtroom staff for their
13 assistance, as always, and we are now in recess.
14     (The hearing concluded at 1:30 p.m.)
15
16
17
18
19
20
21
22
23
24
25

1          CERTIFICATE OF OFFICIAL REPORTER

2

3     I, Cindy S. Davis, Federal Official Court Reporter in and
4  for the United States District Court for the Southern District
5  of Maryland, do hereby certify that I reported, by machine
6  shorthand and computer-aided transcription, in my official
7  capacity the sentencing proceedings had in the case of United
8  Stats of America versus Kamlesh Chauhan, case number
9  8:18-cr-00214-PWG, in said court on March 12, 2019.
10        I further certify that the foregoing 19 pages constitute
11  the official transcript of said proceedings, as taken from my
12  electronic notes to the best of my ability.
13        In witness whereof, I have hereto subscribed my name this
14  26th day of February 2020.

*Cindy S. Davis*

**CINDY S. DAVIS, RPR**
**FEDERAL OFFICIAL COURT REPORTER**