1                UNITED STATES DISTRICT COURT

2                SOUTHERN DISTRICT OF MARYLAND

3

UNITED STATES OF AMERICA )
4                          )
        vs.                )
5                          )        Case Number 8:18-cr-00214-PWG
KAMLESH CHAUHAN,           )
6                          )
            Defendant.     )
7    _____ )

8

         TRANSCRIPT OF PROCEEDINGS - SENTENCING HEARING
9            BEFORE THE HONORABLE PAUL W. GRIMM
          TUESDAY, MARCH 12, 2019; 1:00 P.M.
10                 GREENBELT, MARYLAND

11

FOR THE GOVERNMENT:
12

         Hollis Raphael Weisman, Assistant United States Attorney
13       UNITED STATES ATTORNEY'S OFFICE
         6500 Cherrywood Lane, Suite 200
14       Greenbelt, MD  20770

15   FOR THE DEFENDANT:

16       Larry Allen Nathans, Esquire
         NATHANS AND BIDDLE LLP
17       120 E. Baltimore Street, Suite 1800
         Baltimore, MD  21202

18

19

20       Proceedings recorded by mechanical stenography; transcript
     produced by computer-aided transcription.
21

22   _____

23                    CINDY S. DAVIS, RPR
                  FEDERAL OFFICIAL COURT REPORTER
24                6500 CHERRYWOOD LANE, SUITE 200
                     GREENBELT, MD  20770
25

I N D E X

|                                                   | P A G E |
| Determination of Sentencing Guidelines            | 4       |
| Allocution by Ms. Weisman for the Government       | 8       |
| Allocution by Mr. Nathans for the Defendant        | 8       |
| Sentence                                          | 11      |

1  level would be, they added points in accordance with guideline

2  section 2A3.4(b)(3), and that provision of the guideline has

3  the following language.  It says that for an abusive sexual

4  contact or attempt to commit abusive sexual contact, that if

5  the victim was in the custody, care, or supervisory control of

6  the defendant, increase by two levels.  And that was what was

7  done in the plea agreement.

8      The presentence report takes the position that that

9  should not be added, those two points, and the rationale comes

10  from the examples listed in application note 4, subparagraph A,

11  which gives examples as teachers, daycare providers,

12  babysitters, or other temporary caretakers are among those who

13  would be subject to this enhancement, and the probation officer

14  believed that for that reason the enhancement would not apply.

15      I have looked at the application note in the guidelines

16  section and the materials provided by counsel, and I've

17  considered the reasoning of the presentence report, and I --

18  the way I come down with that -- and I will tell you I tried to

19  do some research.  I couldn't find a lot that went through the

20  underlying cases that deal with this.  Most of the cases that

21  are charged under this statutory violation, the overwhelming

22  majority are for minors or for children, and under those

23  circumstances, of course, the examples listed in application

24  note 4 make sense.  But the beginning phrase in application

25  note (4)(A) is that subsection (B)(3) is intended to have broad

 1   application and is to be applied whenever the victim is

 2   entrusted to the defendant, whether temporarily or permanently.

 3       Now, you can quibble about the language "entrusted to,"

 4   because the victim in this case was not entrusted to the

 5   defendant, but he certainly exercised supervisory control over

 6   her.  And the rationale, when you look at the guideline, is

 7   that whenever someone has a position of trust or authority that

 8   they exercise over someone, and that person becomes a victim of

 9   abusive sexual contact, then the very fact that one of them has

10   control and supervisory power that they can exercise over the

11   other is an example of an enhancing or aggravating set of

12   circumstances.  And the reason is very simple.  A subordinate

13   has less range or latitude or ability to push back and resist

14   and deter unwanted, improper abusive sexual contact.  If it's

15   in a situation of a parent or a guardian, then, of course, the

16   parental relationship gives that power dynamic or operates

17   against the victim.  If it's in school, it's a teacher or a

18   coach or a teaching assistant that gives that imbalance and

19   power that makes it -- facilitates the abuse and prevents and

20   causes concern to the victim.

21       And the same dynamic operates in an employment situation,

22   and the fact that one person is subordinate to another allows

23   there to be a power imbalance such that the dynamic is that the

24   more powerful person, if they are in that position when they

25   initiate unwanted abusive sexual contact, then it is an

Transcript 2

1  aggravating factor, in my mind.

2      So I agree with counsel for the United States and counsel

3  for the defendant.

4      Ms. D'Amato, I respect your analysis.  I think that the

5  examples certainly show that it was a reasoned analysis.  The

6  case law doesn't give a whole lot of guidance on that, but I'm

7  going to respectfully request that the PSR be amended in

8  accordance with my findings here because I do find that the

9  plea agreement was the correct way to approach this.

10      I, therefore, conclude that the offense level is a 12;

11  the criminal history category was a one.  It produces a 10- to

12  12-month recommended range of incarceration, followed by one

13  year of supervised release; a fine of between $4 and $40,000;

14  and a $100, plus $5,000, special assessment, for the total of

15  $5,100.  And that would be my guidelines calculation.

16      Does either counsel for the United States or for

17  Dr. Chauhan wish to be heard on the calculation?

18          MS. WEISMAN:  No, Your Honor.

19          MR. NATHANS:  No, Your Honor.

20          THE COURT:  Okay.  As I said, I am binding myself to

21  the actual sentence, but I just have to make sure that that's

22  done.

23      Now, I want to take a moment, Ms. Weisman, before I ask

24  you for your sentencing presentation.  I have read the victim's

25  statement which you provided, and I have read it twice, and I

1 understand that the victim is not here today and that the

2 government's victim information is that which was provided to

3 me by you in writing; is that correct?

4       MS. WEISMAN: That's correct, Your Honor.

5       THE COURT: Then I am happy to hear your sentencing

6 presentation, Ms. Weisman.

7               **ALLOCUTION BY THE GOVERNMENT**

8       MS. WEISMAN: Your Honor, the parties came to the

9 agreement that a 10-month sentence was appropriate, and we

10 maintain that. We think that that is sufficient, but not

11 greater than necessary, to send the message to the defendant

12 and punish him for his behavior. I do think that the victim's

13 statement is far more eloquent than I could be in this

14 courtroom, and we'd ask the Court to adopt that.

15       THE COURT: Thank you. Mr. Nathans.

16               **ALLOCUTION BY THE DEFENSE**

17       MR. NATHANS: Thank you, Your Honor. Your Honor, I

18 heard what you said, and I understand what the Court's ruling

19 is going to be, so I'm going to be particularly brief, Your

20 Honor.

21       THE COURT: Whatever you think you need to do, sir.

22       MR. NATHANS: No, no, I understand you're not cutting

23 me off, but sometimes less is more.

24     Judge, I did want to say some things about my client that

25 I think should be in the record and are very positive about

1   him.  He's 59, Your Honor.  As the Court knows, he has no

2   criminal record and I think, prior to this case, has had sort

3   of a true remarkable story.

4        He immigrated from a small town in India.  He furthered

5   his education in the United States by receiving his doctorate.

6   He's been married to the same person for over 30 years.  She's

7   in court today.  She's been at every proceeding.  The record is

8   pretty clear he's an excellent father.  He's raised two very

9   successful young men.  One of them is going to college next

10  year; one of them recently graduated.  The older son is doing

11  extremely well.

12            THE COURT:  Yes, he is.

13            MR. NATHANS:  He's been a good community member, Your

14  Honor.  He's always worked hard professionally and otherwise.

15  He's been a very successful scientist.  He's had an important

16  career as a research chemist at the USDA.

17        Your Honor, we attached to the sentencing letters exhibit

18  9, and I won't go over that, but it shows just how important

19  and successful he was in his career and how hard he tried in

20  the things that he did for all of us.

21        Judge, he has pled guilty.  He's accepted responsibility.

22  I think he's been privately and publicly humiliated and,

23  personally, just extremely upset about the whole process.  He

24  had to resign from his employment that he worked so hard at for

25  years.  He's been without employment.  He's suffered

Transcript 2

1 significant financial and future economic loss.  He underwent

2 voluntary psychiatric counseling, which we've attached a

3 letter.  And, Your Honor, he's going to be incarcerated,

4 assuming the Court gives the sentence, at a non-minimum

5 security institution for multiple months.  Judge, we ask that

6 you give the fine of the $5,100.

7          I think Mr. Chauhan at this point, Your Honor, having

8 thought about the matter at great length and knowing what I

9 would say here today, is going to decline to allocute any

10 further at this point.

11          THE COURT:  Okay.  Thank you.

12          So, Doctor, you know that you have the right to speak

13 through your lawyer and not make any additional statement

14 yourself.  You also have the right, if you choose to do so, to

15 make a statement.  Whatever decision you make, I respect, and

16 if you choose to remain silent, as your lawyer has told me that

17 you plan to do, I will not draw any adverse inference against

18 you or in any way hold that against you.  Do you understand

19 that, sir?

20          THE DEFENDANT:  Yes, sir.

21                    (Conference at the bench.)

22     (It is the policy of this court that every guilty plea

23 and sentencing proceeding include a bench conference concerning

24 whether the defendant is or is not cooperating.)

25

1      SENTENCE

2          THE COURT:  Then I'm assuming, Mr. Nathans, there's

3  nothing further, and I will now have you all take a seat, and I

4  will proceed with my sentence.

5          I have carefully considered from the very beginning the

6  plea agreement that counsel have entered into, and I think it

7  was a proper and wise way in which to approach.

8          I want to note that, of course, I not only have reviewed

9  the materials that counsel have filed, but I've also looked at

10  the victim's statement, and it does speak in terms of how she

11  felt in the course of these events that underlie the statement

12  of facts that supported the plea agreement.  It speaks of her

13  feelings of anger, anxiety, fear, guilt, difficulty

14  concentrating, depression, and loss of appetite, and actually

15  saying that, although she has thought about getting counseling,

16  it's too painful to talk about.

17          And I suspect, Ms. Weisman, that undergirds why the fact

18  we're not here with a restitution request is because the victim

19  has chosen, for private reasons, which are within her right,

20  not to try to avail herself of the opportunity to have that as

21  part of the sentence.  And while it may well be that we think

22  that some sort of counseling, which Dr. Chauhan has himself

23  found to be helpful in getting insight into his situation,

24  would be helpful to her, but it is her choice not to seek that,

25  and I gather that that underscores the reason why there's not a

1   restitution request here.  Is that accurate, ma'am?

2        MS. WEISMAN:  That is.  Both the agent and our

3   victim-witness coordinator have been in touch with her, and

4   that's her choice.

5        THE COURT:  I had no doubt about that.  I just wanted

6   to make sure that it was clear or the record.

7        So, Doctor, I have to consider the nature of the offense

8   in deciding the sentence.  I think you have more insight into

9   that now than perhaps you may have before.  And I think it's

10  safe to say that anytime an individual is in a position where

11  they feel as though they have been subjected to unwanted and

12  abusive sexual contact, that it is a serious offense that

13  leaves quite an impact on that person that may last for a great

14  deal of time, if not years and a lifetime.  So it is, of

15  course, a serious offense, and that's one of the factors I have

16  to take into consideration.

17       But I also need to take into consideration your history

18  and characteristics.  Until this event took place, as

19  Mr. Nathans said, you were a star student in India, a wonderful

20  country that has sent here to our country many scientists and

21  lawyers and medical professionals.

22       It was my privilege, in 1972, to spend a month

23  representing the United States at Republic Day ceremonies in

24  India and touring the country and getting a sense of just what

25  a remarkable place it was, and many individuals who were raised

Transcript 2

in India have come to this country to try to bring their education, their talents to bear here.

You were one of those people. You were a scientist, you had great success as you were working for the United States government. You have published papers, and you had some degree of renown. You have a long-standing marriage. Your wife is here standing beside you here in this, although for her this must be as painful, if not more painful, than it is for you, for the simple reason that she, of course, is not at fault for the events that brought you here, but I think she probably feels as though she is suffering the punishment and maybe other members of your family.

Your son, your oldest son writes about what a great dad you are. He is a young man whose achievements should make you proud, of course, and they do. He has not only studied hard and applied himself but done so at exceptionally challenging schools and done so with great success, and he is a young man in whom you can be proud.

My hope is that with the greater insight that you have achieved by reaching out for counseling, understanding the events that led to why you are here today, your doctor has expressed the view that he does not believe that there will be any further repetition of this and does not believe that you are a danger for re-offending, which is good, and it is my hope that the insight that you gain from this will allow you to move

 1  forward and find that you still have the ability to bring your
 2  education and your skill to good use for the benefit of
 3  yourself, your family, and the community, and an opportunity to
 4  work with your family and your wife to repair the damage to the
 5  relationship, where there must necessarily be a concern that
 6  she has, legitimately, about a lack of trust, that I hope, sir,
 7  that you work hard to try to recognize what is her pain in this
 8  and to work with her to help repair that for your sake, for her
 9  sake, and for the benefit of your children, who stand behind
10  you.  No father wants to be in a courtroom, feeling as though
11  he has let down his family.
12       So I do understand that that awareness, that public
13  awareness, I hope will be an extra incentive for you to move
14  forward and to prove that you can move forward from this, that
15  no other person ever need fear this kind of conduct by you, and
16  that you can reestablish yourself as a better person who can
17  once again hold his head up before his family, his community,
18  and his coworkers.
19       I take into consideration the fact that you have never
20  had any criminal charges against you, of course, so that is
21  appropriate for the sentence that has been recommended.
22       I also consider the fact that, therefore, the sentence
23  has to be no more than necessary to achieve the goals of
24  deterrence for you and others and to take into consideration
25  what the guidelines are.

1    So I do sentence you to the 10 months of imprisonment

2  that was the C-plea.  I will place you on supervised release

3  for one year under the following conditions:

4    Number one, I think that your psychiatrist's letter

5  suggests that you are a low risk for a repeat charge, but I do

6  agree with the Probation Department that you should at least be

7  evaluated as to determine whether you need any treatment.  If

8  they do not believe you will need treatment, then they're not

9  going to recommend it, and they may very much reach out to your

10  doctor and get the views of that.

11    If the Probation Department determines that the

12  assessment suggests that there's some treatment that you could

13  benefit from, I will order that.  But I'm not going to order

14  any specific type of treatment, only that if there is a

15  recommendation, based upon the sex-offense assessment, that you

16  need treatment, that you comply with that treatment.

17    I am going to order that there not be any contact with

18  the victim in this case.  She chose not to be here and to speak

19  in writing, and I want you to understand that that means that

20  you may not initiate or, if you do not initiate, if you receive

21  contact from the victim, that you just respond to that by

22  saying that you've been ordered by me not to have any contact.

23  And then, that way, you do not have to be the one to make that

24  decision.  I'm making that decision for you.

25    And there's a special assessment under these type of

```
 1  cases of $5,100, as provided in the presentence report.
 2      That is my sentence.  Mr. Nathans, have you had a
 3  conversation about a surrender date, sir?
 4          MR. NATHANS:  I have, Your Honor, and, Your Honor,
 5  we'd also ask the Court to make a specific recommendation on
 6  placement.
 7          THE COURT:  Yes, do you have one in mind?
 8          MR. NATHANS:  We do, Your Honor.  That would be FCI
 9  Allenwood, Pennsylvania.
10          THE COURT:  Allenwood?  Sure.
11          MR. NATHANS:  And, Your Honor, we would ask for at
12  least 45 days or greater for him to surrender.
13          THE COURTROOM DEPUTY:  Forty-five days is April 29th,
14  and 60 days is May 13th.
15          THE COURT:  Would May 13th be acceptable?  Any
16  problem with May 13th?  That's 60 days.
17          MS. WEISMAN:  No problem.
18          MR. NATHANS:  May 13th would be fine, Your Honor.
19  Thank you.
20          THE COURT:  And that's at 9 a.m., Shante; is that
21  what it is?
22          THE COURTROOM DEPUTY:  Correct.
23          THE COURT:  All right.  So the surrender date will be
24  May 13th at 9 a.m., and I will recommend FCI Allenwood.
25      Doctor, if you believe, after consulting with your
```

1  attorney, that there's any basis for an appeal -- the plea

2  agreement waived any right to appeal, but if you believe that

3  there's a basis for appeal, then you must note your appeal

4  within 14 days of the entry of a judgment of conviction or

5  within 14 days of any appeal that might be sought by the United

6  States.

7      Ms. Weisman, are there any other charges at this point

8  that need to be dismissed?

9      MS. WEISMAN:  Yes, Your Honor.  We would move to

10  dismiss the remaining charges.

11      THE COURT:  All remaining charges for offenses other

12  than what I have just sentenced Dr. Chauhan to are now

13  dismissed.

14      Anything further from the government?

15      MS. WEISMAN:  No, Your Honor.

16      THE COURT:  Anything further from you, Mr. Nathans?

17      MR. NATHANS:  Your Honor, I just have one question.

18  In terms of the evaluation that you've ordered, I would request

19  that if Mr. Chauhan would want to pay for it, that he could go

20  back to Dr. Epstein and get a more formal evaluation that he

21  can present to the Probation Department.

22      THE COURT:  If that's acceptable to the Probation

23  Department, I don't have a problem with that.  I think it's

24  best for me to rely upon their expertise in that regard, but I

25  will -- certainly, if they view the doctor as an acceptable

Transcript 2

1   person to do it, and if he is willing to pay for it, then --

2   I'm not going to order them to do that, but I have no doubt

3   that they would consider it in good faith and make a

4   determination as to whether that was an appropriate way to

5   evaluate it.

6           MR. NATHANS:  Judge, I didn't attach his CV, which

7   probably was a little bit of a mistake, but the reason we chose

8   Dr. Epstein is it's someone that we've worked with in the past,

9   who has a lot of experience in cases involving -- sexual cases.

10  Actually, I think the first case I ever worked with him was a

11  case in Greenbelt where Rod Rosenstein was on the other side.

12  And he does a lot of that.  Although we didn't ask him to

13  specifically --

14          THE COURT:  Perhaps you could make that available to

15  the Probation Department to take a look at his CV.

16          MR. NATHANS:  Sure.

17          THE COURT:  Is that something that if you have

18  something like that, that that is something that the Probation

19  Department would consider?  I'm not ordering you to do it, but

20  if you had a qualified therapist who could do the assessment,

21  that the defendant was willing to pay for, would that be

22  something that could be considered?

23          PROBATION OFFICER D'AMATO:  I'm sure, Your Honor.

24  Usually, typically, cases like this will go to a specialist.

25  So they are a little bit more savvy in terms of what other

Transcript 2

1  providers are out there. But I know it's the case we do it for

2  substance abuse treatment, so I'm sure that they will consider

3  it.

4  THE COURT: Particularly if this doctor is a

5  specialist in this area, and I know --

6  MR. NATHANS: Your Honor, I have his CV if you'd like

7  me to put it in the record.

8  THE COURT: I actually would rather you give it to

9  Ms. D'Amato so that the Probation Department has it. It's in

10  their hands now, so that would be great if they have that.

11  MR. NATHANS: Thank you.

12  THE COURT: I thank our courtroom staff for their

13  assistance, as always, and we are now in recess.

14  (The hearing concluded at 1:30 p.m.)

15

16

17

18

19

20

21

22

23

24

25

```
 1                CERTIFICATE OF OFFICIAL REPORTER

 2

 3        I, Cindy S. Davis, Federal Official Court Reporter in and

 4   for the United States District Court for the Southern District

 5   of Maryland, do hereby certify that I reported, by machine

 6   shorthand and computer-aided transcription, in my official

 7   capacity the sentencing proceedings had in the case of United

 8   Stats of America versus Kamlesh Chauhan, case number

 9   8:18-cr-00214-PWG, in said court on March 12, 2019.

10        I further certify that the foregoing 19 pages constitute

11   the official transcript of said proceedings, as taken from my

12   electronic notes to the best of my ability.

13        In witness whereof, I have hereto subscribed my name this

14   26th day of February 2020.

15

16

17

18

19          Cindy S Davis

20          _____
            CINDY S. DAVIS, RPR
21          FEDERAL OFFICIAL COURT REPORTER

22

23

24

25
```

Transcript 2